**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7345**

WRITER'S EMAIL ADDRESS
**danbrockett@quinnemanuel.com**

October 4, 2017

<u>BY ECF</u>

Honorable Lewis A. Kaplan
United States District Judge
Southern District of New York
500 Pearl Street, Court Room 21B
New York, New York  10007-1312

Re:    *trueEX, LLC et al. v. Markitserv Limited et al.*, Case No. 17-cv-03400

Dear Judge Kaplan:

We write respectfully on behalf of Plaintiffs in opposition to Defendants' motion, dated October 2, 2017.  Defendants unreasonably request that Plaintiffs be directed to produce complete transaction-level detail for every trade ever executed on the trueEX platform, notwithstanding that Defendants have refused to commit to a reasonable production of transaction-related data in return.  Moreover, Defendants have brought their motion while the parties are in the midst of meeting and conferring on the parameters of a mutual data exchange.

Defendants should not be permitted to short-circuit the meet and confer process by obtaining the one-sided data production they seek, and their motion should be denied.  If the Court should entertain Defendants' application, Plaintiffs respectfully request that the Court direct Defendants to produce the transaction-level data Plaintiffs have requested, which would ensure a mutual exchange in which all parties, and not just Defendants, would be able to proceed with their expert analyses.

## Background

MarkitSERV's recitation of the relevant procedural background is highly selective and, as a result, misleading.

*MarkitSERV's Data Requests*.  MarkitSERV reports that, in its June 27 document requests, it requested "data" for each trade executed on the trueEX platform.  Mot. 1.  In fact, MarkitSERV requested "a copy of any data base" containing trade-related information—an absurdly overbroad request that would have required trueEX to provide Defendants with

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE
LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH

unfettered access to its computer systems.  Ex. 1 at 10.[1]  Plaintiffs objected, and invited Defendants to submit new requests identifying the specific data they were seeking, which MarkitSERV agreed to do.  *See* Ex. A at 2.

It was not until August 16 that MarkitSERV provided those revised requests, which sought more than 50 categories of data.  *See* Ex. B.  Plaintiffs responded promptly, first by providing complete information about the fields maintained in each of trueEX's data bases, *see* Ex. C, and then by providing a comprehensive response identifying the categories of data Plaintiffs would be willing to produce, provided simply that Defendants agree "to provide comparable information."  Ex. E at 17-20.

*Plaintiffs' Data Requests*.  In the same meet and confer calls in which the parties discussed MarkitSERV's data requests, they also addressed trueEX's requests, which were served on August 15—one day before Defendants provided their reformulated requests.[2]  *See* Ex. D at 6 (RFP No. 33).  During those discussions, Defendants refused to provide trade-by-trade data, except for those trades executed by trueEX and processed on the MarkitSERV platform—*i.e.*, trades for which trueEX already has complete data in its own systems.  Plaintiffs further limited their request, as to MarkitSERV's non-trueEX transactions, to aggregated data in which MarkitSERV's customers, with the exception of its bank clients, would remain anonymous.  *See* Ex. E at 7.  MarkitSERV has thus far refused this proposal, too, insisting it will produce its data on an entirely "aggregated, anonymized" basis.  Mot. 3.

*Defendants File Their Motion While the Meet and Confer Process is Ongoing*.  Defendants filed the present motion in the midst of the parties' ongoing discussions.  Most recently, in a call on October 2, Defendants advised they would need another two days to respond to Plaintiffs' most recent counter-proposal.  Plaintiffs suggested that—rather than filing motions with issues outstanding—the parties wait two days so they could "determine whether the[y] [were] genuinely at impasse or c[ould] instead reach agreement on a mutual exchange."  Ex. E at 1.  In an email later the same day, Defendants refused Plaintiffs' proposal, Ex. F at 1, and filed the present motion.

### Discussion

trueEX is not, as MarkitSERV complains, "hold[ing] [its] data hostage."  Mot. 1.  trueEX has already produced several hundred thousand documents, including financial data that detail its revenues and costs, and database extracts with information MarkitSERV has requested about every trueEX client that has signed up, been on-boarded, and traded on the trueEX platform. The only portion of its data production trueEX is waiting to produce is its trade-level data, and its

---

[1] References to numbered Exhibits herein are references to the Exhibits attached to MarkitSERV's October 2, 2017 letter motion.

[2] Plaintiffs did not, as Defendants claim, "copy MarkitSERV's data requests word for word."  Mot. 2.  Whereas Defendants had demanded unfettered access to trueEX's databases, Plaintiffs limited their requests to five categories of data.  *See* Ex. D at 6 (RFP No. 33).

reason for doing so is that Defendants have thus far refused to agree to a mutual exchange. Indeed, Defendants are now insisting that Plaintiffs provide detailed data concerning *every trade ever executed on the trueEX platform*, though Defendants have been unwilling to agree to produce the far less detailed data trueEX has sought in return.  Contrary to Defendants' assertion, Plaintiffs are under no obligation to provide such one-way discovery.  *See Cornell Research Found., Inc. v. Hewlett-Packard Co.*, 2006 WL 5097357, at *8 (N.D.N.Y. Nov. 13, 2006) ("[I]n carrying out its discovery oversight responsibilities, [the court] ensure[s] a level playing field for both sides," because "what is good for one is good for all"); *Davidowitz v. Patridge*, , 2010 WL 1779279, at *5 (S.D.N.Y. Apr. 23, 2010) ("Discovery, however, is not a one-way street designed to allow [one party] to collect evidence in support of their claims.  It is also a mechanism for [the other party] to accumulate evidence . . . to test the evidence of their opponents").

Plaintiffs' data requests have been reasonable, and the data Plaintiffs seek is highly relevant.  In an early proposal, after MarkitSERV refused to provide trade-by-trade detail, trueEX agreed to accept MarkitSERV's transaction data on an aggregated basis, organized by each customer. Ex. E at 11-12.  When MarkitSERV complained it has thousands of customers and that this request would therefore be burdensome, trueEX modified its requests again to seek transaction level data aggregated by named bank customers only, with all other customers kept anonymous and grouped within broad categories (*e.g.*, "Buyside" customers). *Id.* at 7.[3]  As trueEX demonstrated in connection with its preliminary injunction application, it cannot hope to compete, if it is denied access to drop copy, for trades involving counterparties, including especially bank counterparties, not connected to the trueEX platform.  The data trueEX is seeking, therefore, is tailored to permitting Plaintiffs' expert to evaluate the extent to which MarkitSERV is shielded from competition and to which trueEX's business would be damaged in the absence of relief.[4]

---

[3] Specifically, Plaintiffs have proposed that MarkitSERV provide trade data aggregated by bank-dealer, showing the notional value and number of trades for the following attributes:  (a) counterparty, (b) currency type, (c) product type, (d) type of processing, and (e) fees charged.  Only bank entities would be identified by name; all other entities would remain anonymous and be grouped into categories (e.g., "Buyside").  *See* Ex. E at 7.  That is in contrast to the far more detailed production Defendants are insisting upon from Plaintiffs, which would include complete detail, with all transaction parties named, on a trade-by-trade basis.

[4] Ironically, Defendants argue they should not be required to make a reciprocal exchange of trade-level data because MarkitSERV's "dataset is exponentially more voluminous" than trueEX's, and "involves 2,000 customers and many millions of trades over six years."  Mot. 3.  MarkitSERV is a behemoth whose monopoly power in the IRS trade processing market is at the very heart of this case.  It should not be permitted to use its own market dominance as a shield against basic discovery that trueEX needs to prove its case.  In any event, given that trueEX is not insisting on trade-by-trade detail, MarkitSERV's complaint is misplaced.  trueEX has narrowed its requests (including by narrowing the time frame to a four-year period running from October 2013), and agreed to forego its initial request for trade-by-trade data, as a reasonable accommodation to MarkitSERV to address that very concern.  *See* Ex. E at 7.

3

The information MarkitSERV demands is not similarly tailored to the issues in this case. Far from Defendants' assertion that Plaintiffs have "conceded" the data MarkitSERV is demanding is "highly relevant," Mot. 1, Plaintiffs have stated repeatedly that the trade-by-trade detail Defendants seek is irrelevant and overbroad, and has offered to produce that data, notwithstanding these objections, only as a compromise to ensure a reasonable production from Defendants in return. *See, e.g.*, Ex. E at 2, 17. Even now, the only explanation Defendants offer as to relevance is that they need trade-level data "to determine how many trades are processed over trueEX's network rather than MarkitSERV's." Mot. 1. But Defendants could make that determination based on aggregated data setting out the total number of trades executed by trueEX. Defendants' assertion that they require additional trade-level detail to ensure against "cherry-picking," Mot. 1, begs the question as to why they have refused to provide the same level of detail to Plaintiffs, who have just as much interest if not more in evaluating the total trading activity handled at MarkitSERV and guarding against cherry-picking by Defendants.

Defendants complain, "most importantly," that trueEX seeks data that "raises significant confidentiality concerns." Mot. 3. But the parties stipulated to a confidentiality order, which the Court entered, that provides an extraordinary level of protection, ensuring that the parties' data will be accessible on an "attorneys' eyes only" basis. *See Chen-Oster v. Goldman, Sachs & Co.*, 293 F.R.D. 557, 566 (S.D.N.Y. 2013) ("[t]he privacy concerns raised by [defendants] are best addressed by the Protective Order and Confidentiality Agreement already guiding discovery in this case, which clearly anticipated the disclosure of confidential [] information"). Moreover, it is entirely within MarkitSERV's power to provide notice of its subpoena obligation to any customer with a contract that provides for confidentiality, as trueEX has done. MarkitSERV has chosen instead to manufacture an obstacle to making a complete data production.

Defendants' insistence that "any delay in obtaining MarkitSERV's data" is "plaintiffs' doing" could not be more wrong. Mot. 3. Plaintiffs served their data requests on August 15, one day before MarkitSERV provided its revised requests in which, for the first time, it identified the categories of data it was seeking. Moreover, trueEX worked in good faith to address MarkitSERV's voluminous demands, agreeing to produce data for every transaction ever executed on its platform, on the sole condition MarkitSERV agree to the less detailed data production Plaintiffs have sought. But Defendants have refused to do so, leaving Plaintiffs in the untenable position—if Defendants were to succeed in their current strategy—of having to provide a detailed account of every trade trueEX ever executed with no assurance as to when or if Defendants would produce their transaction level data as well.

Defendants' gamesmanship should not carry the day. Both parties should mutually exchange transaction-level data, which is what Plaintiffs are prepared to do. Moreover, if Defendants are unable to produce data aggregated in the manner Plaintiffs have proposed, Defendants should be directed to produce complete trade-by-trade detail without limitation.

Respectfully submitted,

/s/ Daniel L. Brockett

Daniel L. Brockett